UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

MICHAEL DELGADO,

                              Plaintiff,              9:21-CV-0120
                                                      (MAD/TWD)

          v.

C.O. DEVLIN,

                              Defendant.

────────────────────────────────

APPEARANCES:

MICHAEL DELGADO
07-A-3535
Plaintiff, *pro se*
Attica Correctional Facility
Box 149
Attica, NY 14011

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

         Pro se plaintiff Michael Delgado ("Plaintiff") commenced this action by filing a

Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court

for the Western District of New York ("Western District") in April 2020, together with an

application to proceed in forma pauperis ("IFP"), and a motion for service by the U.S.

Marshal.  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP" Application); Dkt. No. 3 ("Mot. for Service").

In the Complaint, Plaintiff asserts claims for the violation of his constitutional rights arising out

of his confinement in the custody of the Department of Corrections and Community

Supervision ("DOCCS") at Elmira Correctional Facility ("Elmira C.F.") and Clinton

Correctional Facility ("Clinton C.F.").  *See generally*, Compl.  At the time he filed the Complaint, Plaintiff was incarcerated at Attica Correctional Facility.  *Id*. at 1.

By Decision and Order filed on February 1, 2020 (the "February Order"), Western District Judge Elizabeth A. Wolford granted Plaintiff's IFP Application and Plaintiff's motion for service and severed and transferred the portion of Plaintiff's claims regarding events that occurred at Clinton C.F. to the Northern District of New York.  Dkt. No. 4.  The Western District retained jurisdiction over the claims that arose at Elmira C.F. and dismissed the claims, with leave to file an amended complaint within forty-five days of the Order.[1]  *Id*.

This action was transferred to this District on February 2, 2020.  Dkt. No. 5.  Presently before the Court for review is the portion of Plaintiff's Complaint relating to claims that arose in the Northern District.

## II.  SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should

---

[1]  As of the date of this decision, Plaintiff had not filed an amended pleading in the Western District action.

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal quotation marks and alterations omitted).

   **B.  Summary of the Complaint**[3]

---

[3]  The Complaint includes exhibits.  To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

The following facts are set forth as alleged by Plaintiff in his Complaint.[4]

On June 2, 2017, Plaintiff was admitted for processing at Clinton C.F.[5]  Compl. at 53.

At the direction of defendant Sergeant John Doe ("Sgt. Doe"), defendants Correction Officers

John Doe 1 ("Doe 1") and John Doe 2 ("Doe 2") conducted an "unlawful and unprompted"

strip search.  *Id*.  Plaintiff was ordered into the reception area and directed to remove his

clothes.  *Id*.  Plaintiff complied and stood before the officers in only his boxer shorts.  *Id.*  Doe

1 directed Plaintiff to remove his boxer shorts and expose his genitals so that officers could

"complete the search." Compl. at 53.  Plaintiff objected and claimed that the orders were not

in accordance with DOCCS' policies.  *Id*.  Doe 1 threatened Plaintiff with physical violence if

he did not comply.  *Id*.  Plaintiff acquiesced and exposed his genitals to Doe 1 and Doe 2.  *Id*.

Sgt. Doe was present during the incident and refused Plaintiff's request to intervene.  Compl.

at 53.

On June 30, 2017[6], Plaintiff was escorted to the Mental Health Unit ("MHU") for

observation in response to a hunger strike.  Compl. at 35, 57.  Defendant Correction Officer

Lawer[7] "aggressively" grabbed Plaintiff by his "injured and swollen" ankles, forcefully applied

---

[4]  The Court will not review the facts relating to claims that arose at Elmira C.F. for sufficiency pursuant to Section 1915(e).

[5]  Plaintiff was transferred to the Special Housing Unit ("SHU") at Clinton C.F. for disciplinary reasons. Compl. at 57.

[6]  In the Complaint, Plaintiff refers to "6-31-17".  Compl. at 35.  Based upon subsequent allegations, the Court assumes the incident in question occurred on June 30, 2017.

[7]  Throughout the Complaint, Plaintiff refers to the defendant as "Lawer" and "Lawyer" interchangeably. Because Plaintiff identified the defendant as "Lawer" in the list of parties, *see* Compl. at 4, the Court will refer to defendant as Lawer.

4

ankle restraints, and "slammed" Plaintiff's ankles onto a stainless steel table.[8]  *Id*. at 35.

Before Lawer applied the restraints, Plaintiff informed him that he could not place his feet "on

the table due to his condition."  *Id*.

Plaintiff was interviewed by a psychiatrist and Lawer "repeat[ed] his aggressiveness in

removing the ankle restraints."  Compl. at 35.  As a result of Lawer's actions, Plaintiff's ankles

and feet "slammed" onto a stainless steel table and then to the floor.  *Id*.

On July 1, 2017, Devlin and Lawer escorted Plaintiff to an interview room in the MHU

for a consultation with a psychiatrist.  Compl. at 35.  When the interview was over, Devlin and

Lawer escorted Plaintiff back to an observation cell and asked Plaintiff if he "wanted to play

the game."  *Id*.  Defendants asked the occupants of other cells the same question.  Id.

Another occupant asked Defendants to explain the "game" and Lawer responded that the

"game" required the occupant to "quickly remove his hand from the cell doors hatch opening,

upon the last of the restraints being removed from his wrist, or if not fast enough, risk having

his hand or fingers slammed on by the quick closing of the hatch[.]"  Compl. at 36.  Plaintiff

assumes that one occupant was compelled to "partake" in the game because he heard the

officers count to three, a slam, and then a "shriek."  *Id*.  Lawer then walked by Plaintiff's cell

and said "your next."  *Id*.

From July 6, 2017 until July 31, 2017, Plaintiff was confined in an observation cell in

the MHU.  Compl. at 36.  During that time, Devlin referred to Plaintiff as "an expletive retard"

or "a disparaging term for the female anatomy."  *Id*.  Lawer called Plaintiff "del-gay-doe" and

"classified" Plaintiff as a homosexual for his "amusement."  *Id*. at 36-37.  Plaintiff was

---

[8]  Plaintiff claims that he suffered injuries to his feet and ankles during a use of force incident that occurred at Elmira C.F. in March 2017.  *See* Compl. at 57.

distraught and refused his meals.  *Id*. at 36.

On July 14, 2017, while Plaintiff was on a "hunger strike," defendant Correction Officer Nolette ("Nolette") took a meal tray from another officer and said "I know how to get him to eat."  Compl. at 36.  Nolette offered Plaintiff the tray while "blow[ing] over the open and exposed contents of the meal."  Id.  Nolette repeated this "display" on July 21, 2017.  *Id*. at 36-37.  When Plaintiff refused the tray, Nolette responded, "nobody cares."  *Id*. at 37.

On August 11, 2017, Plaintiff filed a grievance (CL-71965-17) complaining that he was assaulted and harassed in his observation cell.  Compl. at 38-39.  Plaintiff alleged that he was denied showers, officers tampered with food, he was called derogatory names, and he was provided with unhygienic supplies.  *Id*. at 39.  The Superintendent denied the grievance and Plaintiff appealed to the Central Office Review Committee ("CORC").  Id.  CORC issued a decision noting that an investigation was conducted involving "CO D, CO L, and CO N."  *Id*. at 39.

On August 24, 2017 and August 26, 2017, Devlin refused to provide Plaintiff with two meals while he made "numerous references" to Plaintiff's complaints.  Compl. at 37.  Devlin threatened Plaintiff stating, "you think I was on (expletive) then, you haven't seen nothing yet, you just wait."  *Id*.  Devlin also threatened to "break" Plaintiff's fingers.  *Id*.

On August 27, 2017, the day that Plaintiff was released from the MHU, Devlin gave him a beverage that contained "remnants of hair and dirt."  Compl. at 37.  Plaintiff did not consume the beverage or meal.  *Id*.

On September 20, 2017[9], defendant Correction Officer Cabrera ("Cabrera") opened Plaintiff's cell door (D-block, 4 gallery, 4 cell) for breakfast.  Compl. at 40.  When Plaintiff stepped out of his cell, he was assaulted by another inmate.[10]  *Id*.  Plaintiff suffered cuts to his hands and "punched" in the fact.  *Id*.  As a result of the inmate's behavior, chemical agents were deployed and Plaintiff was exposed.  *Id*.  Plaintiff was escorted to the shower area for decontamination.  Compl. at 40.  After he changed clothes, he was met by Devlin who, "smirked" and stated, "you see, I told you I'd get ya."  *Id*.

Plaintiff was treated by medical staff and returned to his cell and was placed on keeplock status.  Compl. at 40-41.  Plaintiff told Cabrera that he was designated to receive "therapeutic meals."  *Id*.  Cabrera responded, "[d]on't [expletive] talk to me" and "walk[ed]" passed Plaintiff's cell.  *Id*.  Plaintiff remained in keeplock for forty-five days.  *Id*.

On October 2, 2017, Plaintiff filed a grievance (CL-72232-17) claiming that he was assaulted and denied therapeutic trays.  Compl. at 42.  The Superintendent denied the grievance and Plaintiff appealed to CORC.  Id.  In the response, CORC noted that Plaintiff "was interviewed [. . .] on 10/10/17 and stated that he was receiving his therapeutic diet tray."  Id.

Construed liberally,[11] the Complaint contains the following: (1) Fourth Amendment

---

[9]  In the Complaint, Plaintiff did not specify the date of the incident.  Compl. at 40.  However, upon review of the remaining allegations and exhibits, the Court assumes the incident occurred on September 20, 2017.  *See id.* at 41.

[10]  Prior to the incident, the inmate and Cabrera "exchanged friendly conversations in Spanish[.]" Compl. at 40.

[11]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, (continued...)

claims against Doe 1, Doe 2, and Sgt. Doe related to strip search; (2) Eighth Amendment excessive force and failure-to-intervene claims against Lawer and Cabrera; (3) Eighth Amendment claims related to harassment and threats against Lawer and Devlin; (4) Eighth Amendment conditions-of-confinement claims; and (5) First Amendment retaliation claims against Devlin and Cabrera.[12]  *See generally*, Compl.  Plaintiff seeks monetary damages. *See id*. at 60.  For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C.  Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

## III.  ANALYSIS

### A.  Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing

---

[11](...continued)
130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

[12]  Plaintiff states, in conclusory fashion, that his equal protection rights were violated.  The Complaint however, is completely devoid of facts supporting an equal protection claim.

a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).  Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against defendants in their official capacities (*see* Compl. at 4-5) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529

(2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

### B. Fourth Amendment

The Fourth Amendment prohibits the government from conducting unreasonable searches. All searches conducted within a prison must be reasonable. *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983) (citation omitted). "Whether a particular [ ] search is constitutional 'turns on an objective assessment of the . . . facts and circumstances confronting [the searching officer] at the time' of the search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)). "There is no dispute that pat-frisks are necessary to prison administration and that the 'execution of policies and practices by prison administrators is to be accorded deference by the judiciary.' " *Webb v. Foreman*, No. 93 CIV. 8579, 1997 WL 379707, at *3 (S.D.N.Y. July 9, 1997) (citations omitted). However, "[a] pat-frisk can become unreasonable, and therefore violate the Fourth Amendment, based on the way in which it is conducted." *Id*. at *4. "The reasonableness of the pat frisk depend[s] on the scope of the intrusion, the manner in which the frisk was conducted, its justification, and the place it was conducted." *Holton v. Moore*, No. 96-CV-0077 (RSP/GJD), 1997 WL 642530, at *6 (N.D.N.Y. Oct. 15, 1997) (citing *Webb*, 1997 WL 379707, at *3).

Here, the Complaint alleges facts plausibly suggesting that Doe 1 and Doe 2

10

conducted a strip frisk, at the direction and under the supervision of Sgt. Doe, that was not related to a legitimate government purpose and was instead conducted to intimidate, harass, or punish Plaintiff.  At this juncture, Plaintiff has alleged enough to require a response from the Doe defendants to the Fourth Amendment claims.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

Because Plaintiff's Fourth Amendment claims are asserted against officers whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name.  If Plaintiff wishes to pursue his claims against the Doe defendants, he must take reasonable steps to ascertain through discovery the identity of those individuals.[13]  Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties.  If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

### C. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

### 1.    Excessive Force and Failure-to-Intervene

---

[13]  As discussed more completely below, some of Plaintiff's remaining claims survive review.  Although those claims are separate and apart from Plaintiff's claims asserted against the Doe defendants, the remaining defendants are requested to respond to reasonable discovery demands from Plaintiff that are aimed at identifying the John Doe defendants.

The prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components:  (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).  Courts within the Second Circuit have held that "overly tight handcuffing can constitute excessive force." *Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008); *Milo v. City of New York*, No. 14–CV–1172, 2014 WL 5933091, at *6 (E.D.N.Y. Nov.14, 2014) (citing *Lemmo v. McCoy*, No. 08–CV–4264, 2011 WL 843974, at *5 (E.D.N.Y. 2011).

Similarly, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim.  *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013).  To establish liability under a

failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment claims against Lawer and Cabrera survive sua sponte review and require a response.[14]  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2.  Threats and Harassment

Without more, allegations of threats and harassment fail to state an actionable claim under the Eighth Amendment.  *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("In this Circuit, allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right

---

[14]    Even construing the Complaint liberally, the pleading lacks facts suggesting that Devlin violated Plaintiff's Eighth Amendment rights.  Plaintiff has not plead that Devlin was personally involved in the alleged assault in September 2017.  Compl. at 40.  Indeed, Plaintiff alleges that Devlin asked a "colleague" to provide him with "the details of exactly what happened." *Id.*

13

and therefore is not actionable under . . . § 1983") *see, e.g., Mortimer Excell v. Fischer*, Civ. No. 9:08–CV–945 (DNH/RFT), 2009 WL 3111711, at *6 (N.D.N.Y. Sept. 24, 2009) ("It is well settled law in this Circuit that 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.") (citations omitted).

Even assuming that Devlin and Lawer harassed, threatened, and/or intimidated Plaintiff, the Complaint lacks facts conveying that Plaintiff sustained any accompanying injuries. Consequently, Plaintiff's Eighth Amendment claims for verbal threats are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### 3. Conditions of Confinement

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting

14

*Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15). The deprivation must be sufficiently serious to warrant Eighth Amendment protection. *See, e.g., Beckford v. Portuondo*, 151 F.Supp.2d 204, 213 (N.D.N.Y. 2001). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F.Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Here, while Plaintiff alleges that Nolette "committed an unhygienic act" with his food and that Devlin served him a contaminated beverage, *see* Compl. at 36-37, he fails to allege that he suffered any injury as a result of ingesting contaminated food. *See Stokes v. Goord*, No. 9:03-CV-1402 (LEK/DRH), 2007 WL 995624, at *4 (N.D.N.Y. Mar. 30, 2007) (dismissing Eighth Amendment claim because records did not indicate that the plaintiff suffered any adverse health effects from the food served to him by defendants). Moreover, Plaintiff's claim that Devlin denied him two meals while he was confined in the MHU, does not

constitute cruel and unusual punishment.  *Butler v. Hogue*, No. 9:08-CV-264 (GLS/DRH), 2010 WL 4025886, at *3 (N.D.N.Y. Oct. 13, 2010) ("Deprivation of only two meals over a two-day period is insufficient to make out a constitutional claim"), *aff'd*, 434 Fed. App'x 36 (2d Cir. 2011).  Accordingly, Plaintiff's Eighth Amendment condition-of-confinement claims against Nolette and Devlin, related to food, are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

A different conclusion is reached with respect to the claim that Cabrera denied Plaintiff his "medically prescribed" therapeutic diet.  *See* Compl. at 40.  At this juncture, Plaintiff has alleged sufficient facts to suggest that the deprivation of his therapeutic meals, for approximately twenty days, meets the objective standard of the Eighth Amendment analysis. *See Quezada v. Roy*, No. 14-CV-4056, 2017 WL 6887793, at *16 (S.D.N.Y. Dec. 14, 2017) (reasoning that the denial of a medically required diet may, in certain circumstances, constitute an Eighth Amendment violation).  Furthermore, Plaintiff has plead facts related to Cabrera's state of mind to satisfy the subjective analysis.  Thus, Cabrera is directed to respond to Plaintiff's Eighth Amendment conditions-of-confinement claim.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### D.  First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional

rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

The filing of a grievance or lawsuit is protected speech.  *See Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).  With respect to the second element, the Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.' "  *Gill*, 389 F.3d at 381 (citation omitted) (omission in original).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id*.  A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).  While there is no "bright line"

17

defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory.  *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty*., 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim.  *See Ortiz v. Russo*, No. 13 CIV. 5317, 2015 W L 1427247, at *12 (S.D.N.Y. Mar. 27, 2015) (granting motion to dismiss retaliation claim where plaintiff "fail[ed] to allege any facts that would support a finding that [the defendants] were personally motivated by the dismissal of an earlier grievance they have no apparent connection with") (citation omitted); *Hare v. Hayden*, No. 09 CIV. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

### 1. Claim Against Devlin

Examining the facts in a light most favorable to Plaintiff, he alleges that Devlin retaliated against him for his grievance when he denied Plaintiff two meals, served him a contaminated beverage, and repeatedly threatened and harassed Plaintiff.  *See* Compl. at 37-39.  At this juncture, Plaintiff has sufficiently plead a First Amendment retaliation claim against Devlin to warrant a response.  *See Ford v. Palmer*, 539 Fed. App'x 5 (2d Cir. 2013)

(holding that threats were sufficiently plead to constitute an adverse action on initial review). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 2. Claim Against Cabrera

Plaintiff insinuates that Cabrera denied him meals in "retaliation" for the September 2017 incident because he was "friendly" with the inmate involved in the assault with Plaintiff. *See* Compl. at 40.  The Complaint does not support that claim as Plaintiff has failed to plead that he engaged in protected speech, of which Cabrera was aware, when Cabrera refused to deliver Plaintiff's meals.  Although Plaintiff filed a grievance against Cabrera in October 2017, he did not file any grievances or complaints against Cabrera prior to the alleged retaliatory conduct.  As Plaintiff has not sufficiently alleged any causal connection between a protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim for retaliation against Cabrera in violation of the First Amendment and this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization

form to the Financial Deputy of the Clerk's Office; and it is further

ORDERED that the Clerk of the Court is directed to terminate the following individuals from the docket report: Anthony Annucci, Donald Venettozzi, Paul Chappius, Jr., Capt. Paul Piccolo, D. Chapman, Corrections Sergeant G. Hill, Mark Taylor, and Jared L. Hartman; and it is further

ORDERED, that pursuant to the Court's review under 28 U.S.C. § 1915 and § 1915A, Plaintiff's claims for monetary damages against Defendants, in their official capacity, are **DISMISSED with prejudice** for failure to comply with the pleading standards and state a claim; and it is further

ORDERED that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against Lawer and Devlin related to threats and harassment; (2) Eighth Amendment conditions-of-confinement claims against Nolette and Devlin; and (3) First Amendment retaliation claim against Cabrera;[15] and it is further

ORDERED that the following claims are survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response (1) Fourth Amendment claims against Doe 1, Doe 2, and Sgt. Doe; (2) Eighth Amendment excessive force and failure-to-intervene claims against Lawer and Cabrera; (3) Eighth Amendment

---

[15] Should Plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

conditions-of-confinement claim against Cabrera; and (4) First Amendment retaliation claim against Devlin; and it is further

ORDERED that Nolette is **DISMISSED** as a defendant herein; and it is further

ORDERED that Plaintiff shall take reasonable steps through discovery to ascertain the identity of the Doe defendants.  **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

ORDERED that the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants.  The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

ORDERED that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

ORDERED that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 15, 2021
        Albany, New York

Mae A. D'Agostino
U.S. District Judge